**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JAGGER INDUSTRIES, LLC | § | CASE NO. 14–31345 |
| | § | Chapter 7 |
| DEBTOR | § | Hon. Karen K. Brown |

<u>**EMERGENCY MOTION OF THE ESTATE OF JASON GEHRIG AND ERIN GEHRIG, INDIVIDUALLY, FOR ABATEMENT OF BANKRUPTCY CASE PURSUANT TO SECTION 305(a) OF THE BANKRUPTCY CODE**</u>

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

    **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

    **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE KAREN K. BROWN:

COMES NOW, the ESTATE OF JASON GEHRIG and ERIN GEHRIG, Individually (collectively, "Gehrig"), and hereby file this emergency motion for abatement pursuant to Section 305(a) of the Bankruptcy Code on the grounds that Gehrig, who will become the owner of the Debtor, Jagger Industries, LLC ("Jagger") (and ultimately control its wholly owned subsidiary, Debtor, Processing Equipment & Technology, LLC ("PET")), will be filing a motion to convert Jagger to Chapter 11, and in support will show as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested may be granted in accordance with the provisions of 11 U.S.C. §§ 305(a) and 105 of the Bankruptcy Code.

## THE PARTIES

2. Prologic Management Systems, Inc., is an Arizona corporation that filed for Chapter 11 relief in Tucson, Arizona. Case No. 4:13-bk-12682-EWH.

3. The Debtor, Jagger, is a Texas limited liability company owned (95%) by Prologic Management Systems, Inc. Jagger filed for Chapter 7 protection in Houston, Texas. Case No. 14–31345.

4. The Debtor, PET, is also a Texas limited liability company and is wholly owned by Jagger. PET filed for Chapter 11 relief in Houston, Texas. Case No. 14–30925.

5. Jason Gehrig (the "Decedent" or "Jason Gehrig") formed Jagger on or about December 9, 2009. He caused PET to be formed on or about December 21, 2010. Jason Gehrig unexpectedly passed away on April 28, 2012 and his Estate is a party in interest.

6. Erin Gehrig, the widow of Jason Gehrig, is also a party in interest.

7. Jim Heim is an individual residing in Tucson, Arizona and Houston, Texas. He has degrees in accounting, finance and law and is the Debtor's representative in the Prologic, Jagger and PET bankruptcy cases.

PROCEDURAL BACKGROUND

8. On February 17, 2014, PET filed for Chapter 11 relief in the Southern District of Texas, Houston Division. This Court was assigned to the PET case. To date, no official committee of unsecured creditors has been appointed.

9. On March 5, 2014, Jagger filed for Chapter 7 relief in the Southern District of Texas, Houston Division. The Honorable Jeff Bohm was originally assigned to the Jagger case[1] and Janet Northrup was appointed as the Chapter 7 Trustee ("Chapter 7 Trustee").

10. On April 9, 2014, this Court, in the Jagger case, granted the Chapter 7 Trustee's application to employ special litigation counsel to pursue claims against Gehrig based on alleged acts of the Decedent, Jason Gehrig, during his time as manager of Jagger.

11. On April 17, 2014, this Court, in the Jagger case, granted the Chapter 7 Trustee's application to employ special litigation counsel to pursue tax matters against the Internal Revenue Service.

---

[1] On April 8, 2014, Judge Bohm transferred the PET case to this Court for administration of Jagger and PET by the same judge.

12. On March 24, 2014, this Court, in the PET case, granted the Debtor, PET's application to employ a broker to market and sell PET's real property (the land where the processing plant is situated) in Baytown, Texas.

## RELEVANT FACTS

13. Jason Gehrig owned a 95% interest in Jagger while the remaining 5% was (is) owned (or to be owned) by the Greater Houston Charitable Foundation. Jagger operates the plant located in Baytown, Texas owned by PET (see below) and was managed by the Decedent from Jagger's inception until his death (April 28, 2012).

14. Jagger's wholly owned subsidiary, PET, owns the land, plant, equipment and related items of the processing plant operated by Jagger. Thus, PET owns the fixed assets while Jagger functions as the operator of the plant.

15. On or about March 31, 2011, the Decedent sold his membership interest in Jagger to Prologic Management Systems, Inc., an Arizona corporation. The sale was evidenced by a Membership Interest Purchase Agreement (the "Purchase Agreement") executed by the Decedent, Jason Gehrig as Seller, and Jim Heim, on behalf of Prologic, as Buyer. The consideration for Prologic's purchase was $12,000,000, reflected in two promissory notes; one for $250,000 ("First Note") and the other for $11,750,000 ("Second Note") (together, the "Notes").

16. As collateral for the Notes, Jason Gehrig was granted a security interest in the membership interest (the "Security Interest") reflected in a collateral pledge and security agreement (the "Security Agreement"), executed by Jim Heim, on behalf of Prologic.

17. Following the sale (which closed at least 6-7 months after the Effective Date of March 31, 2011), Jagger became a subsidiary of Prologic with the Decedent continuing as manager of Jagger.

18. Gehrig[2] is a party in interest in the Jagger and PET bankruptcy cases because the Jagger membership interest serves as collateral for Prologic's purchase of Jagger in March 2011.

19. Prologic paid the First Note in accordance with its terms. Regarding the Second Note, Prologic was to commence monthly payments of Fifty-Six Thousand Twelve Dollars and twelve cents ($56,012.12), with the first payment due on October 15, 2011 and continuing thereafter until April 16, 2016.

20. Prologic made the monthly payments on the Second Note without incident until Jason Gehrig passed away (on April 28, 2012). After Jason Gehrig's death, Prologic immediately defaulted on the first payment that was due following Jason Gehrig's death, May 15, 2012 (the "Default").

21. Since the Debtor's Default, no payments have been made and apparently, none are forthcoming.

22. Due to Prologic's Default on the Second Note, Gehrig commenced an action against Prologic in Harris County Probate Court, No. 1, in the State of Texas (the "Probate Court") for, *inter alia*, breach of contract. Prologic was properly served and appeared through its counsel, Harold "Hap" May[3]. Thereafter, a nonjudicial foreclosure proceeding of the Jagger membership interests was scheduled for July 25, 2013.

23. On the eve of the scheduled foreclosure, Prologic filed its Chapter 11 petition in the District of Arizona, Tucson Division, which stayed the foreclosure proceedings.

24. As a result, Gehrig filed a Proof of Claim in Prologic's bankruptcy case in the amount of $13,760,430.02 (including interest) in connection with Prologic's default of the Second Note.

---

[2] The Estate of Gehrig and Erin Gehrig are collectively known as "Gehrig" for the purposes of this motion, although they are two separate parties. The Estate of Gehrig has an interest in Jason Gehrig's assets and Erin Gehrig, as the widow of Jason Gehrig, has a community property interest in Jason Gehrig's assets.

[3] Harold "Hap" May also represented Jason Gehrig with respect to the sale of his membership interest in Jagger to Prologic.

25. On September 11, 2013, Prologic filed a report with the Arizona bankruptcy court, detailing its financial condition, including the value of its subsidiaries (the "September 11, 2013 Report"). According to that report, Prologic's most valuable asset was Jagger. Per the September 11, 2013 Report, Jagger "should, to a buyer (s.i.c.) who has needs for this type of facility, permitting and equipment, be worth as much as $3.5 million dollars," while "if the property was sold under a forced liquidation sale, the value would be as much as 50% lower than the potential $3.5 million." Docket No. 41 in 13-12682. A copy of the September 11, 2013 Report is attached hereto as *Exhibit A*.

26. On October 8, 2013, Gehrig filed a motion for relief from the automatic stay; or, in the alternative, to dismiss or convert the case or appoint a trustee in the Prologic bankruptcy proceeding (the "Lift Stay Motion"). Docket No. 46 in 13-12682. Based on Prologic's Default on the Second Note and its valuation of Jagger per the September 11, 2013 Report, Gehrig's interest in the collateral, the Jagger shares, was not adequately protected and Prologic lacked equity in the Jagger shares. Gehrig requested that Judge Hollowell grant the motion for relief from the automatic stay in order for Gehrig to continue its foreclosure of the Jagger membership interests. A copy of the motion is attached hereto as *Exhibit B*.

27. On November 21, 2013, Prologic filed a disclosure statement (the "Disclosure Statement"). In the Disclosure Statement, Prologic indicated that its plan was to sell its membership interest in Jagger in a measured and methodical manner to garner the highest sales price. Further, Prologic would engage in litigation against Gehrig to conclusion with the intent to defeat Gehrig's secured claim of $13,760,430.02. There was no mention in the Disclosure Statement of any business or operations to be reorganized.

28. On December 20, 2013, the Arizona Bankruptcy Court held a hearing on Gehrig's Lift Stay motion. At the hearing, Judge Hollowell issued the following: "…[T]he stay is lifted to permit the matter to go forward in Texas including the claims and counterclaims but there can be no execution on any judgment which involves property of the bankruptcy estate…" Attached as *Exhibit C* is a copy of the minutes from the hearing.

29. As a result of the Arizona Bankruptcy Court's directive conditionally lifting the automatic stay to allow the Probate Court case to continue, Gehrig was under the assumption that Prologic would resolve its claims against Gehrig in Probate Court and that Prologic would not attempt to transfer the assets of Jagger without the permission of its secured creditor, Gehrig and the Arizona Bankruptcy Court.

30. However, on February 14, 2014, Prologic secretly engaged in several transactions to divest its most valuable asset, Jagger, from Prologic. Prologic caused PET to sell the equipment in the processing plant to another entity, Southwestern Biofuels, LLC ("SWB"), a new company formed by one of Prologic's creditors, Washakie Renewable Energy, LLC ("WRE"), for $50,000 with a 180 day repurchase option for $75,000. This sale occurred outside Prologic's Plan, was not authorized by the Arizona Bankruptcy Court, was conducted without prior notice to Prologic's secured creditor, Gehrig, was conducted without notice to Prologic's other creditors, was for substantially less consideration than the value of the assets (per the valuation of Prologic in its September 11, 2013 Report), and was inconsistent with Prologic's Disclosure Statement and Plan.

31. Also on Friday, February 14, 2014, PET and SWB entered into a Letter of Intent for SWB to purchase substantially all of the remaining assets of PET, including the land, equipment and intellectual property of PET for a purchase price of only $1,100,000. Of note, this $1.1M

purchase price includes the equipment already purchased by Southwestern Biofuels, thereby (presently) decreasing the purchase price in the Letter of Intent by $50,000. This letter of intent was entered into without the prior approval of the Arizona Bankruptcy Court, without notice to Prologic's secured creditor, Gehrig, was conducted without notice to Prologic's other creditors, was for substantially less consideration than the value of the assets (per the valuation of Prologic in its September 11, 2013 Report), and was inconsistent with Prologic's Disclosure Statement and Plan.

32. Also on Friday, February 14, 2014, Prologic caused Jagger to enter into a settlement Agreement with WRE and Renewable Energy Holdings, LLC ("REH") (REH is a related entity of WRE) whereby Jagger would pay WRE $800,000 and an agreement to work together to prosecute Jagger's claims against Gehrig. Additionally, Prologic caused Jagger to release its counter-claims against WRE and REH for no consideration.

33. Three (3) days later (the next business day), on February 17, 2014, Prologic caused PET to file for Chapter 11 relief in the Southern District of Texas, Houston Division.

34. On February 21, 2014, Prologic filed an amended disclosure statement (the "Amended Disclosure Statement"); however, there was no disclosure of PET's bankruptcy filing or the February 14, 2014 transactions that PET engaged in (just prior to PET's bankruptcy filing). Per the Amended Disclosure Statement and Plan, Prologic's business plan remained the same—to sell the assets of Jagger to a third party and to litigate claims against Gehrig.

35. On March 3, 2014, Gehrig filed a motion and commenced an adversary proceeding to temporarily restrain Prologic from selling the assets of Jagger and PET. In the restraining order motion, Gehrig informed the Court that it had learned of further transactions that Prologic engaged in to strip Jagger and PET of its values, including the following:

a) On or about June 26, 2013, Jagger allegedly agreed to pay Cascade Finance Partners, LLC ("Cascade") for "consulting services" for Jagger, and as a result of such engagement, Jagger allegedly owes $43,500.00 to Cascade. According to Larry Caldwell, the Controller for Prologic, Jagger and PET, there are no records supporting this transaction or the consulting agreement.

b) On or about August 1, 2013, Cascade allegedly agreed to finance the purchase of inventory for $150,000, and upon sale (virtually immediately after the purchase), Jagger would pay Cascade $165,000. Apparently, the funds were advanced, the inventory was purchased, and the resulting product was sold (nearly simultaneously). According to Larry Caldwell, the proceeds of this sale were paid directly to Cascade. Thus, this loan was paid in full; yet, the bankruptcy schedules of Jagger reflect that this loan has an outstanding balance for its original amount.

(c) There was an additional sum of $54,167 loaned to Jagger or paid on behalf of Jagger for attorneys' fees, EPA inspection fees, "etc." According to Larry Caldwell, there is no evidence that this money was paid to anyone.

(d) All of the above alleged debts owed to Cascade were then combined into a new loan together with a (new) line of credit for

-9-

        another $150,000 (the "New Loan").  Per Larry Caldwell, no amounts were advanced on this line of credit to Jagger or PET.

  (e)  In connection with the New Loan, Jagger and PET granted to Cascade a first lien and Deed of Trust on the real property owned by PET; that is, the land where the processing plant is located.  However, just two months prior to this date, Prologic had valued the plant at $3,500,000 (*See Exhibit A*, the September 11, 2013 Report).  Assuming all of the foregoing transactions with Cascade were legitimately conducted, Jagger owed at most $262,500, far less than the value of the plant, making Cascade an (alleged) oversecured creditor.  Prologic provided this security interest to Cascade to further thwart Gehrig's rightful attempts to regain the assets of Jagger and its subsidiary, PET.  *See November 15, 2013 Loan Agreement and Deed of Trust Attached as Exhibit D.*

- On March 5, 2014, the Arizona Bankruptcy Court conducted a hearing on Gehrig's motion for a temporary restraining order.  During the hearing, Prologic's counsel, Eric Sparks, informed Judge Hollowell that Jagger had filed a petition for Chapter 7 relief earlier that day and that there was no further need for Prologic to be in Chapter 11 and remain under the Arizona Bankruptcy Court's jurisdiction.  Following the hearing, Judge Hollowell issued a temporary restraining order in favor of Gehrig prohibiting Prologic from further selling or otherwise transferring any of its assets or the assets of its affiliates (Jagger and PET).

- All of the foregoing actions undertaken by Prologic put the assets of Jagger (and its subsidiary, PET) further away from the reach of its secured creditor, Gehrig.  Despite the fact that Judge Hollowell had conditionally lifted the automatic stay to allow Prologic and Gehrig to litigate their claims against each other in the Probate Court and that the assets of the Prologic estate remain under the jurisdiction of the Arizona Bankruptcy Court, Prologic secretly transferred the assets of Jagger and PET to third parties.

- On March 18, 2014, Gehrig filed a motion for sanctions against Prologic's president, Jim Heim and its attorneys, Eric Sparks and Harold "Hap" May, due to Prologic's bad faith and abuse of the bankruptcy process, through the misconduct of its representatives.  The Arizona Bankruptcy Court has scheduled a hearing on the sanctions motion for May 14, 2014, during which Jim Heim, Eric Sparks (Prologic's Tucson attorney) and Harold "Hap" May have been ordered by Judge Hollowell to personally appear.

- On March 25, 2014, the Arizona Bankruptcy Court ordered that the automatic stay in Prologic's case be vacated due to the fact that Jagger had filed for bankruptcy in the Southern District of Texas; and thus, there was no need to have the automatic stay protect Prologic.  As a result, Gehrig is allowed to pursue foreclosure of the Jagger membership interests and become the owners of Jagger (and its subsidiary, PET).

- Presently, a foreclosure sale is scheduled for May 7, 2014. After the scheduled foreclosure is concluded, Gehrig will become the owner of Jagger (unless another individual or entity bids more than $13,760,430.02, the amount of the Gehrig's claim).

## RELIEF REQUESTED

36. As described above, there is a pending foreclosure of the Jagger membership interest on May 7, 2014. At that time, Gehrig will acquire ownership of Jagger (and assume control of its subsidiary, PET). As the owner of Jagger, Gehrig's goal is to convert Jagger to a Chapter 11 proceeding and return Jagger and PET to profitability, whether pursuant to a joint Chapter 11 reorganization or a workout outside of bankruptcy. Operating Jagger and PET under Chapter 11 would serve the best interests of the creditors and the debtor. Therefore, Gehrig respectfully requests that the Court abate the bankruptcy proceedings of Jagger and PET until at least after May 7, 2014.

37. Section 305(a)(1) of the Bankruptcy Code provides:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension….

38. Herein, the interests of Jagger and PET would be better served by an immediate, but short suspension of their bankruptcy cases. Presently, Jagger's assets are being administered by Chapter 7 Trustee, Janet Northrup. While the Trustee's goal is to liquidate Jagger's assets and distribute the proceeds to Jagger's creditors, she may not be concerned with maximizing the value of Jagger's assets. Meanwhile, Gehrig desires to convert Jagger to Chapter 11 after it has acquired Jagger at the foreclosure sale. Gehrig believes that Jagger has valuable assets and, with some investment by Gehrig, could be maintained at a profit, and ultimately sold in a measured manner. The Court should give Jagger a chance to reorganize, which potentially would provide a greater distribution to Jagger's creditors than in a liquidation. Therefore, it would best serve

the interests of the creditors and the bankruptcy estate of Jagger to abate Jagger's bankruptcy case until after the foreclosure sale has been concluded. *In re Gurley*, 22 B.R. 124 (Bankr. W.D. Tenn. 1998). Further, Jagger has the right to automatically convert to a Chapter 11 case, pursuant to Section 706(a) of the Bankruptcy Code. Gehrig will be exercising this right when it succeeds to ownership of Jagger following the foreclosure sale.

39. Abatement would also serve judicial economy and preserve the limited resources of the bankruptcy estates of Jagger and PET. *In re Optical Technologies, Inc.*, 325 B.R. 651 (Bankr. M.D. Fla. 2005). Once the Gehrig becomes the owner of Jagger (and assume control of its subsidiary, PET), it would withdraw the motion to employ a broker to sell PET's real property (where the processing plant is located). That is because PET would retain its real property in order for the processing plant to continue its operations.

40. Further, the Court can use its equitable powers pursuant to Section 105 of the Bankruptcy Code to issue a short suspension of the bankruptcy proceedings until Gehrig has acquired Jagger through the foreclosure sale, which is what Gehrig set out to do almost a year ago. From July 2013 to the present, Gehrig has had to appear in several courts in different jurisdictions (Arizona Bankruptcy Court, Harris County Probate Court, and now the Southern District of Texas) to protect its right to foreclose on its collateral, the Jagger membership interest. At each instance, Prologic has thwarted Gehrig's attempts to foreclose. Rather, Prologic has misused the protection of the courts, including this Court, to put the Jagger membership interest further away from the hands of its creditor, Gehrig. The temporary abatement would allow Gehrig to be in the position it should have been in, if not for Prologic's abuse (through its representatives, Jim Heim, Harold "Hap" May and Eric Sparks) of the bankruptcy process in the District of Arizona and the Southern District of Texas.

## **PRAYER**

41. WHEREFORE, for all of the above reasons, the ESTATE OF JASON GEHRIG and ERIN GEHRIG, Individually, respectfully request that this Court enter an order abating the bankruptcy proceedings of Jagger Industries, LLC and Process Equipment and Technology, LLC, and grant such other and further relief as the Court may deem just and proper.

Dated: April 25, 2014

                    Respectfully submitted,
                    Fisher & Associates

                    */s/ Bennett G. Fisher*
                    Bennett G. Fisher
                    Texas Bar # 07049125
                    bgf@fisherlaw.net
                    909 Fannin Street
                    1800 Two Houston Center
                    Houston, Texas 77010
                    *Tel*    (713) 223-8400
                    *Fax*   (713) 609-7766
                    *Attorneys for the Gehrig of Jason Gehrig and Erin Gehrig, Individually*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that on April 25, 2014, Rhonda Chandler, the attorney for the Chapter 7 Trustee of Jagger Industries, LLC, was contacted by telephone and she stated that she objected to the foregoing motion. Also on April 25, 2014, Ronald Sommers, the attorney for Process Equipment & Technology, LLC, was contacted by telephone and e-mail regarding the foregoing motion. Mr. Sommers has not responded as of the time of this filing.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April, 2014, I sent a true and correct copy of the above and foregoing Gehrig of Jason Gehrig And Erin Gehrig, Individually's Motion For Abatement Pursuant To Section 305(a) Of The Bankruptcy Code to the following parties by the following means:

FOR JAGGER INDUSTRIES, LLC

(1) Counsel for the Debtor (*Via ECF*);

Kimberly Anne Bartley
Waldron & Schneider, LLP
15150 Middlebrook Dr.
Houston, Texas 77058

(2) Chapter 7 Trustee (*Via ECF*)

Janet S. Casciato-Northrup
Hughes Watters and Askanase
333 Clay, 29th Floor
Houston, Texas 77002

(3) U. S. Trustee (*Via ECF*)

Office of the U.S. Trustee
515 Rusk Ave., Suite 3516
Houston, Texas 77002

(4) Counsel for Pacific Business Capital Corp. (*Via ECF*)

Bruce B. Osterstrom PC
245 Fischer Ave
Suite A-1
Costa Mesa, CA 92626

 (5)  Counsel for CIMA Services, LP (*Via ECF*)

    Megan Nichole Brown
    3050 Post Oak Boulevard, Suite 1425
    Houston, TX 77506

 (6)  All other creditors and parties in interest were served a copy of the Motion to Abate via regular first class mail.  A copy of the exhibits are available upon request.  See attached list setting forth names and addresses.

<u>FOR PROCESS EQUIPMENT & TECHNOLOGY, LLC</u>

 (1)  Counsel for the Debtor (*Via ECF*);

    Richard A. Kincheloe
    Nathan Sommers Jacobs
    2800 Post Oak Blvd, 61st Floor
    Houston, Texas 77056

 (2)  U.S. Trustee (*Via ECF*)

    Ellen Maresh Hickman
    Office of the U S Trustee
    515 Rusk St., Ste. 3516
    Houston, Texas 77002

 (3)  Counsel for Harris County et al (Via ECF)

    John P. Dillman
    Linebarger Goggan Blair & Sampson LLP
    P.O. Box 3064
    Houston, Texas 77253-3064

 (4)  All other creditors and parties in interest were served a copy of the Motion to Abate via regular first class mail.  A copy of the exhibits are available upon request.  See attached list setting forth names and addresses.

                /s/ Bennett G. Fisher
                Bennett G. Fisher